IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Burl Washington, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 5:16-3913-BHH |
| | ) | |
| Federal Bureau of Prisons; Hugh J. | ) | |
| Hurwitz; J. A. Keller; Bonita S. Mosley; | ) | |
| Nanette Barnes; Hector Joyner; Maureen | ) | **ORDER AND OPINION** |
| Cruz; B. J. Meeks; Rex Blocker; Donardo | ) | |
| Fonte; Tammara Bryan; Richard Lepiane; | ) | |
| David Garcia; Eve Ulmer; Estate of Victor | ) | |
| Loranth; David Massa, and Anthony | ) | |
| Harvey, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Burl Washington ("Plaintiff"), proceeding *pro se* at the time, brought this civil

action pursuant to 42 U.S.C § 1983. (ECF. No. 1.) By way of Court Order, Plaintiff was

appointed counsel on April 11, 2017, and he has received legal representation since that

time. (*See* ECF No. 43.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02

for the District of South Carolina, this matter was referred to United States Magistrate

Judge Kaymani D. West for pretrial handling. The matter is now before this Court for review

of the Report and Recommendation ("Report") issued by the Magistrate Judge on August

6, 2018. (ECF No. 148.) In her Report, the Magistrate Judge recommends that the Court

grant Plaintiff's Motion for Preliminary Injunction (ECF No. 126), and direct the Federal

Bureau of Prisons ("BOP") to retain Plaintiff at his current location, FCI-Butner, until the

conclusion of this case. (*See* ECF No. 148 at 19.) The Magistrate Judge further

recommends that the Court leave it to BOP's medical judgment as to how to manage

Plaintiff's medical care in general, but direct BOP to follow the directions of Plaintiff's

outside physicians as to medication administration and timing, and as to follow-up care as

closely as reasonably feasible. (*Id.*) The Report sets forth in detail the relevant facts and standards of law, and the Court incorporates them here, summarizing below only in relevant part.[1]

## BACKGROUND

Plaintiff is a legally blind federal inmate, previously housed at FCI-Williamsburg, FCI-Estill, and FCI-Edgefield, all within the geographical coverage of this Court. Plaintiff suffers from primary open-angle glaucoma ("POAG") and related intraocular pressure ("IOP"). He is currently housed at FCI-Butner, in Butner, North Carolina. From December 2016 through May 2018, Plaintiff was transferred to various Federal Bureau of Prisons ("BOP") facilities nine times. Plaintiff asserts that he has been subjected to cruel and unusual punishment due to BOP's "inconsistent medical care" and failure to provide him with the medical and personal assistance that he needs because of his blindness. Specifically, Plaintiff contends that the frequent transfers to which he has been subjected deprive him of the ability to establish a therapeutic relationship with an ophthalmologist and other needed specialists, and subject him to irreparable harm.

In her Report, dated August 6, 2018, the Magistrate Judge recommends that the Court grant Plaintiff's Motion for Preliminary Injunction. (*See* ECF No. 148.) Defendants filed objections to the Report on August 20, 2018. (ECF No. 155.) Plaintiff filed objections to the Report on the same day. (ECF No. 156.) On September 4, 2018, Plaintiff filed a reply in opposition to Defendants' objections. (ECF No. 164.) This matter is ripe for adjudication and the Court now issues the following ruling.

---

[1] As always, the Court says only what is necessary to address the parties objections against the already meaningful backdrop of a thorough Report and Recommendation by the Magistrate Judge; comprehensive recitation of law and fact exists there.

## LEGAL STANDARDS

**Standard of Review**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**Preliminary Injunction**

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation and quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (citation omitted). The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending

trial is limited to cases where "the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). "In each case, 'courts must balance the competing claims of injury and consider the effect on each party of granting or withholding the requested relief.'" *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). The court must pay particular regard for the public consequences of employing the extraordinary remedy of injunction. *Id.; see also The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010) (reinstating court's previous discussion of *Winter*'s preliminary injunction standards following remand from the United States Supreme Court).

## DISCUSSION

The Magistrate Judge first concluded that the Court has jurisdiction over BOP for injunctive relief, finding overbroad Defendants' assertion that BOP's discretion concerning where Plaintiff will be housed precludes jurisdiction in this Court. (ECF No. 148 at 5-7.) Magistrate Judge West stated, "This court has jurisdiction to consider whether the exercise of such discretion comports with constitutional standards." (*Id.* at 6.)

Defendants object to this conclusion, arguing that BOP's discretion to designate a federal prisoner's place of imprisonment is exempt from challenge under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. (*See* ECF No. 155 at 2-4.) Specifically, Defendants argue that waiver of sovereign immunity under section 702 of the APA does not apply where "agency action is committed to agency discretion," *see* 5 U.S.C. § 701(a)(2), and the designation of a federal prisoner's place of imprisonment is committed to the discretion of BOP pursuant to 18 U.S.C. § 3621(b). (ECF No. 155 at 3.) Defendants

further assert that the Court lacks authority to review BOP's discretionary decisions in providing medical care and implementing the recommendations of Plaintiff's outside specialist physicians in a correctional setting. (*Id.* at 4.)

The Court disagrees and finds that Magistrate Judge West was correct to conclude that the Court has jurisdiction over BOP to issue injunctive relief under the circumstances of this case. While it is true that BOP maintains discretion in deciding where to house federal inmates and what medical care they should receive (a point which Plaintiff freely concedes (*see* ECF No. 164 at 3)), that discretion is not unbridled, in the sense that specific exercise of that discretion is still subject to review for compliance with federal law, here, the Eighth Amendment to the U.S. Constitution. In other words, even within categories of decision-making normally committed to agency discretion, there is a line where the scope of discretion stops and violations of constitutional rights begin. Accordingly, the Court joins other courts in concluding that it has the authority to remedy unconstitutional conduct, even when that authority infringes upon BOP's general discretion over inmate housing and medical treatment. *See, e.g.*, *Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 180-82 (D.D.C. 2013) (holding that "Congress has not explicitly precluded review of *constitutional* claims" arising from BOP's housing determinations, and stating that review of such claims does not entail "reviewing the merits of BOP's decision as to *where* [the inmate] is housed, but [rather] the constitutionality of the conditions of confinement it places on him regardless of where he is housed" (emphasis in original)); *see also Webster v. Doe*, 486 U.S. 592, 601 (1988) (holding that § 102(c) of the National Security Act precluded judicial review of the CIA Director's employment termination decisions, but did not preclude review of constitutional challenges based on those same

termination decisions).

Second, the Magistrate Judge concluded that Plaintiff's claims are not moot because, "while it appears that Plaintiff is no longer being subjected to the same conditions of confinement that he was experiencing when he filed the Complaint, it also appears that the negative aspects of his medical condition are on-going." (ECF No. 148 at 7.) Specifically, Magistrate Judge West found that the unique circumstances presented by Plaintiff's ocular condition, in combination with BOP's repetitive relocation of Plaintiff after short periods of time at numerous confinement facilities, constitute an exceptional situation where the actions challenged in Plaintiff's injunctive relief claim are too short in duration to be fully litigated prior to cessation, and invoke a reasonable expectation that Plaintiff will be subject to the same actions again. (*Id.* at 7-9.) *See Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) (holding that an injunctive-relief claim is not moot if the plaintiff can show "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again" (citation and quotation marks ommitted)). In other words, the constitutional violations of which Plaintiff complains are "capable of repetition, yet evading review." *See id.*

Defendants object to this conclusion, arguing that several of the Magistrate Judge's statements are too speculative, namely: "Plaintiff's evidence shows that such an 'exceptional situation' is present because there is a 'reasonable expectation that the same complaining party will be subject to the same action again.'" (ECF No. 148 at 8 (quoting *Incumaa*, 507 F.3d at 289)); "Moreover, it is reasonable to assume that continuing transfers from prison to prison could prevent him from obtaining review of the conditions of which he

complains." (ECF No. 148 at 9). Defendants assert that several of the locations among Plaintiff's various transfers prior to this arrival at FCI-Butner were simply temporary holdover facilities "where inmates are housed while in transit to their permanent housing locations." (ECF No. 155 at 5.) Defendants argue that these holdover facilities should not be considered "transfer locations" because Plaintiff was never assigned to these institutions permanently. (*Id.*) Defendants go on to explain various aspects of the facilities at the Federal Correctional Complex in Butner, North Carolina ("FCC Butner"), and indicate that Defendants entered a "Medical Hold-Do Not Transfer" order on Plaintiff's inmate profile in order to allow Plaintiff to receive the regular chronic care necessary to address his ocular conditions. (*Id.* at 5-6.)

The Court overrules Defendants' objections in this regard, and finds that the Magistrate Judge was correct to conclude that the conditions of which Plaintiff complains are capable of repetition and are of a nature as to evade review if repeated. Notably, Defendants placed the "Medical Hold-Do Not Transfer" order on Plaintiff's inmate profile after Magistrate Judge West issued her Report, but before they filed their objections. (*See* ECF No. 155-1 (showing medical hold applied to Plaintiff's profile as of August 14, 2018); ECF No. 155 (reflecting a filing date of August 20, 2018).) There is no basis to conclude that this "medical hold" status will remain for any specific period of time, and no evidence to show that Defendants could not simply reclassify Plaintiff's care level and transfer him away from BOP's medical complex on a whim.[2] Moreover, it is immaterial that the

---

[2] "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways. A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (internal citations, quotation marks, and modifications omitted).

numerous institutions where Plaintiff was housed prior to FCI-Butner were "temporary holdover facilities," to which Plaintiff was never assigned permanently. The inescapable fact is that Plaintiff was transferred over and over again, during a sustained period of time in which he was seeking treatment for an objectively painful and degenerative eye disease.[3] Common sense dictates that continued repetitive housing transfers would severely impede, if not functionally prevent, an individual suffering from Plaintiff's medical condition from obtaining the type of consistent medical care needed over time.

Third, the Magistrate Judge determined to be without merit Defendants' argument that Plaintiff cannot satisfy the success on the merits prong because he has not exhausted his BOP administrative remedies at FCI-Edgefield, FCI-Loretto, and FCI-Butner. (ECF No. 148 at 10.) The Magistrate Judge noted that Plaintiff's allegations regarding deficient medical care and disability assistance center on problems encountered while he was housed at BOP institutions in South Carolina: FCI-Williamsburg, FCI-Estill, and FCI-Edgefield. (*See id.*) The Magistrate Judge further stated that, with the exception of one issue relating to Plaintiff's attendance at an ophthalmologist appointment while housed at FCI-Edgefield, Defendants did not deny–in their response to the motion–that Plaintiff exhausted his BOP remedies with respect to his medical care and disability assistance claims. (*Id.*) Accordingly, the Magistrate Judge concluded that any failure of exhaustion regarding conditions at non-South-Carolina institutions is irrelevant and that Plaintiff has sufficiently exhausted his BOP remedies with regard to the issues in his preliminary

---

[3] It is undisputed that Plaintiff has suffered from POAG since 2005, that POAG, when not well managed, causes severe pain in the eyes due to IOP, and that elevated IOP causes damage to the ocular nerve, which leads to vision loss. Plaintiff's glaucoma has worsened during his time in BOP (since 2009), and he is now legally blind in both eyes. On July 30, 2018, Plaintiff was seen by ophthalmologist Dr. Franklin Li, who recommended him for evaluation for possible surgery. (*See* ECF No. 155-2 at 160.) It was further noted that Plaintiff's IOP was "still high on maximal medication regimen." (*Id.*)

injunction motion. (*Id.* at 10-11 (citing *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005) (stating inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the defendant).) In the event that the undersigned did not agree that Plaintiff's exhaustion efforts satisfy the administrative exhaustion requirement, the Magistrate Judge recommended that the Court exercise its "traditional equitable power to issue injunctions to prevent irreparable injury pending exhaustion of administrative remedies." (*Id.* at 11 (quoting *Simmons v. Stokes*, No. 2:09-CV-2406-DCN, 2010 WL 2165358, at *4 (D.S.C. May 26, 2010) (internal quotation marks and citation omitted).)

Defendants object to the Magistrate Judge's statement that "Plaintiff has sufficiently exhausted his BOP remedies" and her recommendation that "the Court proceed to consider the merits of the motion." (ECF No. 155 at 7.) Defendants assert that Plaintiff has not shown that an injunction is necessary to "prevent irreparable injury," insinuating that the Court's traditional equitable powers (as cited in *Simmons*) would not be properly invoked here. Morever, Defendants state that they presented limited information on the issue of exhaustion of administrative remedies in their response to the preliminary injunction motion (*see* ECF No. 134 at 17-21) only because "Plaintiff was requesting an injunction based on alleged continuing conduct at his new institution [FCI-Butner]." (ECF No. 155 at 7-8.) Defendants urge the Court to consider the extensive arguments regarding exhaustion of administrative remedies made in their motion to dismiss, currently pending before the Court and awaiting a report and recommendation, wherein Defendants stipulate that Plaintiff exhausted remedies regarding some, but not all, of his allegations. (*See* ECF No. 144 at 14-33.)

The Court overrules this objection and finds that it improperly seeks to incorporate large portions of a filing–the motion to dismiss–that was not before the Magistrate Judge when she issued her Report on the preliminary injunction motion. To be clear, the Court is not at present ruling that Plaintiff has exhausted administrative remedies with respect to all of his claims. Indeed, Plaintiff concedes that he did not exhaust *all* available remedies at *every* facility in which he was housed. (*See* ECF No. 156 at 7.) He argues that it would be absurd to require him to exhaust administrative remedies over and over again, on the same general set of medical care and disability concerns, at each institution. (*See* ECF No. 138 at 4-5.) The exhaustion issue will be taken up more fully when the Magistrate Judge proceeds to consideration of the motion to dismiss. However, the Court finds that Defendants failed, in their briefing on the preliminary injunction issues, to meet their burden to show that Plaintiff did not adequately exhaust remedies related to, at the least: (1) his request to be housed at a BOP facility with an appropriate level of care, and (2) his request to receive medical treatment consistent with his outside, independent medical providers' recommendations. *See Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017) ("[F]ailure-to-exhaust is an affirmative defense that the defendant must raise." (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[I]nmates need not plead exhaustion, nor do they bear the burden of proving it.").

Moreover, even if Plaintiff's exhaustion efforts to date have not, as a technical matter, satisfied the administrative exhaustion requirements with respect to this subset of his claims for injunctive relief, the Court finds the current circumstance appropriate for the invocation of its equitable power to issue an injunction in order to prevent irreparable injury (*see* analysis *infra*) pending satisfaction of the exhaustion requirements. *See Simmons*,

2010 WL 2165358, at *4 ("'The [Prison Litigation Reform Act] contains nothing expressly foreclosing courts from exercising their traditional equitable power to issue injunctions to prevent irreparable injury pending exhaustion of administrative remedies.'"(quoting *Jackson v. Dist. of Columbia*, 254 F.3d 262, 268 (D.C. Cir. 2001) (internal modifications omitted)). In Plaintiff's reply in support of his preliminary injunction motion and his reply to Defendants' objections, he indicated that he was in the process of exhausting his remedies at FCI-Butner (*see* ECF Nos. 138 at 5 n.2; 164 at 7-8), which process might be completed at this point given the passage of time. It should be noted that, to the extent Plaintiff failed to repeatedly exhaust administrative remedies at each successive institution regarding the same general healthcare concerns, that failure was likely exacerbated by the transfers themselves. Accordingly, the Court will proceed to consideration of the merits of Plaintiff's motion.

The Magistrate Judge concluded that Plaintiff's allegations and supporting documentation satisfied the requirements for issuance of the extraordinary remedy of preliminary injunction. Regarding the likelihood of success on the merits factor, the Magistrate Judge found that Plaintiff has long required specialized care for his POAG and IOP conditions, that the proof offered by Plaintiff shows a failure of BOP medical providers to adequately follow the instructions of Plaintiff's treating eye specialist, and that said proof further demonstrates resulting and causally-related deterioration of Plaintiff's ocular condition–to include pain and vision loss. (*See* ECF No. 148 at 11-16.)

Defendants object by arguing that the Magistrate Judge was ill-advised to rely on the affidavit of Dr. Nutaitis, Plaintiff's outside treating ophthalmologist at the Medical University of South Carolina, because Dr. Nutaitis has no experience practicing medicine

inside a correctional institution and is unfamiliar with BOP clinical guidelines for treatment in that setting. (ECF No. 155 at 9-10.) Defendants further object "to the Magistrage Judge's broad conclusion that the Defendants' actions were the primary factor in the deterioration of Plaintiff's degenerative disease of glaucoma, as the Plaintiff's own documented failure to attend pill line and failure to seek medication administration on numerous occasions also contributed to the elevated IOP numbers and progression of his disease." (*Id.* at 10.)

Somewhat ironically, Defendants protest that they did not include "thousands of pages of medical care detailing every aspect of Washington's care at each of the institutions where he has been housed," *because* they were "focused on his current care at FCC Butner **to demonstrate he is currently receiving the care requested in his motion**." (ECF No. 155 at 9 (emphasis added).) If it is true that Plaintiff is indeed receiving the very care requested in his motion, then it is unclear why Defendants object so vociferously to the imposition of the preliminary injunction recommended by the Magistrate Judge, which would simply ensure that Plaintiff continues to receive the medical care he is–according to Defendant's protestations–already receiving.

Nevertheless, the Court finds that Plaintiff has carried his burden to demonstrate the necessity of a preliminary injunction on the likelihood of success on the merits prong, because he has offered proof from a treating specialist tending to show that the specialist's medical instructions were not followed and that causally related pain and injury to Plaintiff's eyesight resulted. (*See* Nutaitis Aff., ECF No. 126-2 (setting forth treatment instructions that were not followed, follow-up appointments that did not occur, and recommended eye surgeries that were significantly delayed, though each was deemed medically necessary by the treating ophthalmologist and failure to treat IOP in a timely manner leads to

increased pain and vision loss).)

It may very well be true that Plaintiff's *own* failure to follow through on treatment and/or to take eye drops and medications as directed has contributed to the deterioration of his condition and the progression of his disease, perhaps even more than other causal factors. Defendants have set forth evidence that Plaintiff has been argumentative with BOP medical staff about how his medications should be administered, sometimes even refusing medications if not given in the order he desired or by the staff member he requested. (*See* ECF No. 134-3 at 3-4, 8, 10, 12, 31, 33, 45, 54-56, 88, 107, 110, 112, 118 (documenting Plaintiff's argumentativeness and refusal to take certain medicines on divers occasions).) The Court is not naively unaware of how a prisoner's own intransigence and unwillingness to follow institutional guidelines regarding medical treatment can contribute to the worsening of his condition, and it is certainly possible that Plaintiff's actions have had such a deleterious effect. In the event that Plaintiff's own conduct has caused his injury, his ultimate recovery will, of course, be correspondingly limited or even foreclosed. However, the filing currently under consideration is a motion for preliminary injunction, not a motion for summary judgment, and the undersigned is of the view that Plaintiff has made a sufficient showing to demonstrate a likelihood of success on the merits with respect to the limited scope of the injunction recommended by the Magistrate Judge.

With respect to the irreparable harm factor, the Magistrate Judge concluded that Plaintiff's allegations and supporting proof established that frequent transfers among prisons has prevented him from forming a long-term therapeutic relationship with vision specialists as recommended by his treating physicians. (ECF No. 148 at 16-17.) The Magistrate Judge further found that Plaintiff offered sufficient proof to show that the inability

to establish such a relationship resulted in inconsistent medication protocols and follow-up care, ultimately contributing to the deterioration of Plaintiff's eyesight. (*Id.*) The Magistrate Judge stated:

> While it is true that Plaintiff is now housed at an appropriate prison for his needed level of care, the ongoing transfers from inappropriate prison[4] to inappropriate prison to date do not instill confidence that he will remain at FCI-Butner in absence of the requested injunctive relief. Accordingly, despite Defendants' unsupported assertions, there is no showing that the harm that could befall Plaintiff should another transfer occur is merely possible or remote.

(*Id.* at 17.)

Defendants object to the Magistrate Judge's conclusion that a history of inconsistent treatment, evidence showing that Plaintiff's condition will worsen if treatment does not remain consistent, and an established tendency of the BOP to frequently move Plaintiff, together satisfy the irreparable harm requirement. (*See* ECF No. 155 at 12.) Defendants again point to the "medical hold" entered on Plaintiff's inmate profile, arguing that it will ensure Plaintiff "remain[s] at the FCC Butner Medical Complex to obtain access to treatment at Care Level 3 and 4 facilities." (*Id.*) Defendants further object to the Magistrate Judge's conclusion that a history of previous transfers demonstrates that the harm that could befall Plaintiff is not merely possible or remote. They argue that Plaintiff is currently housed at an institution with a care level that exceeds the severity of his medical needs, and that Plaintiff is "receiving nearly daily medical encounters at FCC Butner, is currently being treated by a specialist, receiving medication administration multiple times daily from BOP staff, and has inmate companions assigned to assist with his [activities of daily living

---

[4] In her Report, the Magistrate Judge uses the term "inappropriate prison" to refer to institutions with an inadequate level of care to meet Plaintiff's complex medical needs. (*See* ECF No. 148 at 14 (using the term "inadequate-care-level institution").)

or "ADLs"]." (*Id.* at 12-13.)

The Court is sensitive to the fact that Defendants appear to have corrected many, perhaps most or even all, of the inadequacies in Plaintiff's medical care. Moreover, even though the "medical hold" on Plaintiff's inmate profile was placed *after* the Magistrate Judge entered her Report recommending that this Court require the BOP to keep Plaintiff at FCI-Butner until the conclusion of the case, the Court assumes good faith on Defendants' part – namely, that the "medical hold" was placed with Plaintiff's medical interests in mind and not simply as a matter of shrewd litigation strategy. Nonetheless, the Court agrees with the Magistrate Judge's conclusion that Plaintiff's allegations of imminent and immediate irreparable harm are not merely remote or speculative. First, even the medical records attached to Defendants' objections state that on July 30, 2018, after Plaintiff's transfer to FCI Butner, and while on a regimen of "maximal meds," Plaintiff's IOP was "possibly still too high." (ECF No. 155-2 at 226-28.) Second, as previously noted, the Court has no assurance that the "medical hold" could not be removed just as simply as it was placed, subjecting Plaintiff to the same vulnerability of being transferred that he experienced in the past on a repeated basis. As such, the Court finds that the necessity of keeping Plaintiff at the same BOP facility in order to assure a long-term therapeutic relationship and consistent treatment protocols is sufficiently connected with the likelihood of irreparable harm under the circumstances, as to justify the imposition of a preliminary injunction. Accordingly, the Court overrules Defendants' objections on the irreparable harm prong of the analysis.

Regarding the balance of equities factor, the Magistrate Judge concluded that the equities of the case weigh in favor of granting Plaintiff's motion. (ECF No. 148 at 18.) The Magistrate Judge stated:

> Plaintiff's interest in remaining in one institution with the appropriate care level for a significant period of time to establish appropriate therapeutic relationships and access medically necessary services is significant. On the other hand, there is no evidence that a directive to the BOP that it retain Plaintiff at his current location would unduly burden the BOP or excessively intrude on its discretionary authority over prison management.

(*Id.*)

Defendants object to this conclusion by arguing that the possible injury to prison administrators "is potentially grave" if a preliminary injunction is granted requiring the BOP to transfer or retain an inmate as a district court directs. (ECF No. 155 at 13.) Defendants cite *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980), for the proposition that it is an abuse of discretion for a court to intrude upon the informed discretion of BOP administrators to make inmate housing decisions. (*Id.* at 13-14.)

*Wetzel* is distinguishable. In that case, the plaintiff, a North Carolina prisoner, brought a civil rights action alleging violation of his Eighth and Fourteenth Amendment rights by prison officials' failure to transfer him to a facility commensurate with his medium custody classification. 635 F.2d at 284. The district judge entered a preliminary injunction requiring prison administrators to transfer the plaintiff to a medium custody facility and permit him to participate in any rehabilitative programs that might be available to him at such facility. *Id.* The Fourth Circuit reversed, finding that "under the facts of [the] case" it was an abuse of discretion for the district court to impose such an injunction because, *inter alia*:

> It is impossible for the judiciary to predict the ramifications of placing a potentially disruptive force into a medium custody unit. The emotional climate of a penal institution may be dangerously heightened by the transfer of this individual. Additionally, the prison authorities' affidavits suggest that Wetzel could be a serious escape risk if transferred to a medium custody unit.

*Id.* at 286, 288. In particular, the Fourth Circuit concluded that the district court "failed to

adequately assess the likelihood of harm to North Carolina prison administrators if the preliminary injunction did issue and the public interest involved." *Id.* at 291.

Unlike the situation in *Wetzel*, the injunction at issue here would simply require the BOP to *retain* Plaintiff at the facility in Butner, North Carolina, specifically for the purpose of ensuring the continuity of adequate medical treatment. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) ("A preliminary injunction is an extraordinary remedy intended to *protect the status quo* and prevent irreparable harm during the pendency of a lawsuit." (citing *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (emphasis added)). Defendants have heavily emphasized that they placed a "medical hold" on Plaintiff's inmate profile in any event, and any amorphous injury to prison administrators' generalized discretion is speculative under the circumstances. Accordingly, the Court finds that the Magistrate Judge properly balanced the equities, and that requiring the BOP to retain Plaintiff at the facility in Butner will not inappropriately infringe on prison officials' discretion or create any undue cost, hardship, or risk for Defendants.

Here, a word must be said about the specifics of the injunctive relief under consideration. In her Report, the Magistrate Judge recommends an order directing the BOP to retain Plaintiff at "FCI-Butner" for the remainder of this case. However, in their objections, Defendants explain:

> The FCC Butner Medical Complex houses one of the BOP's six Federal Medical Centers (FMCs), which are Care Level 4 institutions, as well as five (5) Care Level 3 institutions, including the FCI Butner-Low, where Washington is housed. FCC Butner has adapted a "step-up, step-down" philosophy. All of the inmates at the FCC Butner medical complex are able to receive medical services at the FMC. As patients recover or stabilize, they are transferred to an appropriate security level institution within the complex. Many inmates housed at the FCC Butner medical complex are treated in an outpatient fashion where they are transported to the FMC for medical services and specialist appointments while being housed at the other 5

17

institutions. In addition to onsite specialists, such as an ophthalmologist and optometrist, the FMC provides surgical and cancer treatments, occupational therapy, physical therapy, and a mental health psychiatric unit. Inmates assigned to the FMC for housing are primarily receiving hospital care, as the FMC is not designed as a long-term housing assignment.

(ECF No. 155 at 5-6.) Defendants further state that the "medical hold" placed on Plaintiff's inmate profile allows him to remain housed at the FCC Butner Medical Complex and obtain treatment at both Care Level 3 and 4 facilities. (*Id.* at 6.) In the interim between the completion of briefing on the parties' objections and the entry of this Order, Defendants also filed a Supplemental Response to Report and Recommendation for Issuance of Preliminary Injunction (ECF No. 167). Therein, Defendants explain various incidents of inmate discipline applied to Plaintiff since his transfer to FCC Butner, and express concern that the preliminary injunction recommended by the Magistrate Judge would require BOP administrators to house Plaintiff *only* at **FCI Butner-Low**, even if that housing determination was at odds with his custody and security level, as reflected by the severity of his substantiated code violations. (*See id.* at 2-5.) The Court now clarifies that the relief being considered is whether or not to require the BOP to retain Plaintiff at the **FCC Butner Medical Complex** generally, not FCI Butner-Low specifically. Transfer among and between appropriate security level institutions within the complex would be considered compliant with the injunctive relief recommended. To the extent the Magistrate Judge intended to limit her analysis and recommendation to **FCI Butner-Low**, the Report is hereby modified to reflect consideration of retention at the **FCC Butner** complex. Accordingly, the Court hereinafter uses the term "FCC Butner" to refer to the place of Plaintiff's confinement.

With respect to the public interest factor, the Magistrate Judge correctly stated that prisoners have a constitutional right to adequate medical care while incarcerated, and that

prison officials' deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. (ECF No. 148 at 19 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).) The Magistrate Judge further stated, "While it is true that the public also has an interest in the efficient management of prison systems, that interest must give way where the provision of constitutionally required care is in jeopardy." (*Id.*) Finally, she concluded that "the injunctive relief requested will not unduly increase prison expenses or restrict the prison's overall management discretion," and found that the public interest favors granting the Plaintiff's motion. (*Id.*)

Defendants object to this conclusion, arguing that the evidence they submitted demonstrates that Plaintiff is already receiving appropriate medical care at FCC Butner, including appointments with an ophthalmologist, inmate companions (to assist with ADLs), and assistance with his medication administration. (*See* ECF No. 155 at 16-17.) They further argue that "the long history of public policy supports the Defendants' position that the Court should not directly involve itself in the orderly running of prison administration by issuing court orders on inmate housing matters." (*Id.* at 17.) Defendants aver that if this Court indulges Plaintiff's request to be housed in a particular institution, it will open the floodgates of litigation and provide "legal ammunition" for the approximately 184,000 inmates housed by the BOP to make similar requests. This slippery slope, Defendants assert, will increase the judicial workload and multiply the cost, in taxpayer dollars, of responding to additional complaints, all of which causes the public interest to weigh against Plaintiff and in favor of Defendants. (*See id.*)

The Court disagrees, and finds that the public interest factor weighs in Plaintiff's favor *under the specific circumstances of this case*. To be clear, it is both good and right

that Plaintiff is now receiving appropriate medical care. The public has a strong interest in maintaining correctional policies that ensure federal inmates receive constitutionally required treatment for serious, long-term illness and disease. Where, as here, the preliminary injunctive relief requested imposes no additional cost and does not meaningfully impact BOP administrators' general inmate housing discretion, the usual public interest in favor of prison officials' free exercise of their discretion is curtailed. By granting Plaintiff's motion for a preliminary injunction, the Court is neither indulging Plaintiff's preference, nor providing a decision of any precedential value upon which other inmates could capitalize in the future. Rather, the unique circumstances and severity of Plaintiff's POAG and IOP, in conjunction with a history of repeated institutional transfers, justify the imposition of a preliminary injunction in this case. This Order does nothing to displace the extensive body of case law upholding the BOP's discretionary authority against prisoners' legal challenges of every variety, including housing determinations.

Finally, in light of the foregoing analysis, the Court finds that further discussion of Plaintiff's objections (ECF No. 156) would be extraneous. Plaintiff does not object to the Magistrate Judge's recommendations and, indeed, fully endorses those recommendations. (*See id.* at 1, 6.) Accordingly, Plaintiff's objections are overruled as moot.

## CONCLUSION

After *de novo* review, the Court agrees with the Magistrate Judge's conclusions and recommendations in the Report. Accordingly, the Report is adopted and incorporated herein, by specific reference, to the degree not inconsistent. Both Defendants' and Plaintiff's objections are overruled. Plaintiff's Motion for Preliminary Injunction (ECF No. 126) is, therefore, GRANTED as more particularly described below. The matter is returned

to Magistrate Judge West for further pretrial proceedings.

The Federal Bureau of Prisons is directed to retain Plaintiff at the FCC Butner Medical Complex until the conclusion of this case. Transfer to an appropriate security level institution within the FCC Butner Medical Complex will be considered compliant with this Order. The Court leaves to BOP's medical judgment the general management of Plaintiff's medical care, but directs BOP to follow the instructions of Plaintiff's outside physicians as to medication administration and timing, and as to follow-up care as closely as reasonably feasible. Modification of those treatment directives, if based upon the reasonable medical judgment of qualified BOP ophthalmologists and vision specialists, will be considered compliant with this Order.

IT IS SO ORDERED.

/s/Bruce Howe Hendricks
United States District Judge

November 20, 2018
Greenville, South Carolina

\*\*\*\*\*

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.