UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Burl Washington, | ) | Civil Action No. 5:16-cv-3913-BHH |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Federal Bureau of Prisons; Hugh J. | ) | |
| Hurwitz; J. A. Keller; Bonita S. Mosley; | ) | |
| Nanette Barnes; Hector Joyner; | ) | |
| Maureen Cruz; B. J. Meeks; Rex | ) | |
| Blocker; Donardo Fonte; Tammara | ) | |
| Bryan; Richard Lepiane; David Garcia; | ) | |
| Eve Ulmer; Estate of Victor Loranth; | ) | |
| David Massa; and Anthony Harvey, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Burl Washington ("Plaintiff"), proceeding *pro se* at the time, brought this civil action pursuant to 42 U.S.C § 1983. (ECF. No. 1.) By way of Court Order, Plaintiff was appointed counsel on April 11, 2017, and he has received legal representation since that time. (*See* ECF No. 43.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 for the District of South Carolina, this matter was referred to United States Magistrate Judge Kaymani D. West for pretrial handling. The matter is now before this Court for review of the Report and Recommendation ("Report") issued by the Magistrate Judge on January 3, 2019. (ECF No. 172.) In her Report, the Magistrate Judge recommends that the Court grant in part Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 144), and deny it in part. (*See* ECF No. 172 at 40–41.) The Report sets forth in detail the relevant facts and standards of law, and the Court

incorporates them here, summarizing below only in relevant part.[1]

## BACKGROUND

Plaintiff is a legally blind federal inmate, previously housed at FCI-Williamsburg, FCI-Estill, and FCI-Edgefield, all within the geographical coverage of this Court. Plaintiff suffers from primary open-angle glaucoma ("POAG") and related intraocular pressure ("IOP"). He is currently housed at FCI-Butner, in Butner, North Carolina. From December 2016 through May 2018, Plaintiff was transferred to various Federal Bureau of Prisons ("BOP") facilities nine times. This case was filed *pro se* while Plaintiff was housed in South Carolina.

Plaintiff sues the BOP and sixteen (16) federal officials and employees, asserting that he has been discriminated against because of his disability ("Rehabilitation Act claim") and that he has been subjected to cruel and unusual punishment due to BOP's inconsistent medical care and failure to provide him with the medical and personal assistance that he needs because of his blindness ("Injunctive Relief claim" and "*Bivens* claims"). Plaintiff seeks declaratory and injunctive relief from Defendants BOP, Hurwitz, and Keller (Counts One and Two), and damages and declaratory and injunctive relief from the remaining Defendants (Counts Three, Four, and Five). In Count Six, Plaintiff seeks a preliminary injunction against Defendants BOP, Hurwitz, and Keller. (*See* ECF No. 128.)

Defendants filed their Motion to Dismiss the Second Amended Complaint on July 24, 2018. (ECF No. 144.) Plaintiff responded on August 14, 2018 (ECF No. 149), and Defendants replied on August 27, 2018 (ECF No. 160). Magistrate Judge West issued

---

[1] As always, the Court says only what is necessary to address the parties objections against the already meaningful backdrop of a thorough Report and Recommendation by the Magistrate Judge; exhaustive recitation of law and fact exist there.

her Report on January 3, 2019. (ECF No. 172.) Plaintiff and Defendants filed their respective objections on February 19, 2019. (ECF Nos. 184 & 185.) Plaintiff filed a reply to Defendants objections on March 5, 2019. (ECF No. 188.) The matter is ripe for consideration and the Court now issues the following ruling.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## DISCUSSION

### A. Exhaustion of Administrative Remedies

After surveying the conflicting case law of various federal appellate courts regarding whether the affirmative defense of exhaustion of administrative remedies is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12, or whether it must be raised through a motion for summary judgment, the Magistrate Judge concluded that the balance of persuasive authority counsels against allowing a claim of

a lack of administrative exhaustion to be raised under Rule 12(b)(1), which permits reference to outside documentation. (ECF No. 172 at 6–11.) Moreover, the Magistrate Judge found that lack of administrative exhaustion does not implicate personal jurisdiction or venue, so Defendants' Prison Litigation Reform Act ("PLRA")/*Bivens* exhaustion defenses are not properly raised under Rule 12(b)(2) or (3). (*Id.* at 11.) With respect to Rule 12(b)(6), the Magistrate Judge correctly noted that outside documentation that was neither attached to nor incorporated into the pleadings, such as affidavits and non-public records, may not be considered without converting a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. (*Id.* at 11–12.) "Such a conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448-49 (4th Cir. 2011) (citation omitted).

With these principles in mind, the Magistrate Judge concluded that Defendants' contention that Plaintiff failed to exhaust his administrative remedies with respect to his *Bivens* claims (Counts Three and Four) against Defendants who are or were employed at FCI Edgefield during the relevant time period (Mosley, Barnes, Blocker, Fonte, and Bryan) is properly considered at this stage because the lack of exhaustion is clear from the face of the pleadings without resorting to outside documentation. (ECF No. 172 at 12.) Furthermore, the Magistrate Judge found that it was impossible for Plaintiff to have exhausted his *Bivens* claims for matters occurring at FCI-Edgefield because those matters occurred after this lawsuit was already filed, and that the Second Amended Complaint should be dismissed insofar as it asserts *Bivens* claims against Defendants Mosley, Barnes, Blocker, Fonte, and Bryan. (*Id.*)

Plaintiff agrees with the Magistrate Judge that he could not have exhausted his administrative remedies for his time at FCI Edgefield prior to filing his initial Complaint, but objects to the conclusion that Defendants Mosley, Barnes, Blocker, Fonte, and Bryan are entitled to dismissal. (ECF No. 184 at 3.) In support, Plaintiff distinguishes his case from the facts at issue in *Woodford v. Ngo*, 548 U.S. 81 (2006), arguing that Washington was "repeatedly subjected to the same or similar conduct by multiple prison officials then repeatedly transferred without warning to new prison facilities where the same or similar conduct continued at the hands of the officials and employees at the new prisons." (*Id.* at 4.) Plaintiff further argues, "*Woodford* did not deal with a repeated pattern of conduct or repeated transfers of the inmate that would interfere with the inmate's ability to exhaust his administrative remedies." (*Id.* at 5.) Plaintiff contends, "If a strict interpretation of the PLRA's administrative exhaustion requirement is adhered to in this scenario, the Court is effectively requiring that Washington file separate suits for each facility where he was subject to the same treatment within the same penal system just so he can exhaust his administrative remedies at each facility." (*Id.*)

The Court disagrees and overrules the objection. Plaintiff's arguments in this regard imprecisely assert that Defendants' conduct at each facility where Plaintiff was housed was "the same." As Plaintiff himself notes, "The purpose of the PLRA administrative exhaustion requirement is to place the prison facility on notice of a prisoner's claims and give the facility an opportunity to address any grievances regarding the violations of his federal rights before the prisoner files suit." (*See id.* at 4 (citing *Artis-Bey v. District of Columbia*, 884 A.2d 626, 638 (D.C. 2005)).) It is hyperbole to suggest that Plaintiff would need to file separate lawsuits pertaining to his treatment at each

facility. There was nothing to stop Plaintiff from completing grievance procedures at FCI Edgefield in order to give corrections officials notice of the *specific* problems he was encountering with his medical treatment at *that* facility. Plaintiff exhausted his administrative remedies at FCI Williamsburg prior to filing suit in December 2016 (*see* ECF No. 184 at 5), so he was familiar with the grievance process. There also would have been nothing to stop Plaintiff from amending his pleadings in the instant case to add the FCI Edgefield Defendants after having given notice to those officials through administrative means, allowing them a corresponding opportunity to correct the allegedly deficient medical treatment. Accordingly, the Court finds that this objection is insufficient to displace the sound reasoning of the Magistrate Judge, and the *Bivens* claims (Counts Three and Four) against Defendants Mosley, Barnes, Blocker, Fonte, and Bryan are dismissed without prejudice for lack of administrative exhaustion.

Next, the Magistrate Judge concluded, "Consideration of Defendants' assertions regarding Plaintiff's exhaustion of administrative remedies for his [Rehabilitation Act] claim is distinguishable from consideration of PLRA exhaustion because it has been held that exhaustion of [Rehabilitation Act] claims is jurisdictional." (ECF No. 172 at 14–15 (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *Williams v. Brennan*, 320 F. Supp. 3d 122, 129 (D.D.C. 2018); *Howland v. United States Postal Serv.*, 209 F. Supp. 2d 586, 590 (W.D.N.C. 2002); *Roach v. Gates*, Nos. 2:07-00136-DCN, 2:07-01574-DCN, 2012 WL 1952680, at *4 (D.S.C. May 30, 2012)).) Therefore, the Magistrate Judge found that the issue should be considered under Rule 12(b)(1), and that it was appropriate to rely on outside documents. (*Id.* at 15.)

Defendants offered the affidavit of Lisa M. Charles, Supervisory Attorney in the

Equal Employment Office ("EEO") of the BOP, for the purpose of showing that Plaintiff failed to comply with 28 C.F.R. § 39.170, which requires prisoners who believe that they have been subjected to discrimination covered by the Rehabilitation Act to exhaust Department of Justice ("DOJ") EEO procedures after having first exhausted BOP grievance procedures.[2] (*See* ECF No. 144-2.) Citing rulings by sister courts within the Fourth Circuit and other district courts, the Magistrate Judge found that a federal prisoner seeking to assert a Rehabilitation Act claim must first exhaust the BOP process and then exhaust the DOJ EEO process before his administrative remedies will be deemed exhausted. (*Id.* at 16–17.) Accordingly, the Magistrate Judge concluded that the Court lacks subject matter jurisdiction over the Rehabilitation Act claim, and the Motion to Dismiss Count One of the Seconded Amended Complaint should be granted without prejudice. (*Id.* at 17.)

Plaintiff contends that the Magistrate Judge erred by concluding that administrative exhaustion under the Rehabilitation Act is jurisdictional, and thus objects to consideration of dismissal of Count One pursuant to Rule 12(b)(1). (ECF No. 184 at 7–8.) The Court agrees and sustains the objection.

First, the cases cited in the Report for the proposition that "exhaustion of

---

[2] The relevant language of § 39.170 is permissive, not mandatory: "Any person who believes that he or she has been subjected to discrimination prohibited by this part *may* by him or herself or by his or her authorized representative file a complaint with the Official. Any person who believes that any specific class of persons has been subjected to discrimination prohibited by this part and who is a member of that class or the authorized representative of a member of that class *may* file a complaint with the Official." 28 U.S.C. § 39.170(d)(1)(i) (emphasis added). However, in combination with the requirements of the PLRA, courts have construed exhaustion of the DOJ EEO procedures as a necessary second step after exhaustion of BOP administrative complaint procedures in the context of prisoner Rehabilitation Act claims, because the DOJ EEO procedures are an "available" remedy: "No action shall be brought with respect to prison conditions under section 1983 of this title, *or any other Federal law,* by a prisoner confined in any jail, prison, or other correctional facility until *such administrative remedies as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

[Rehabilitation Act] claims is jurisdictional" all deal with employment lawsuits, wherein employees complained that their employer discriminated against them on the basis of a disability. In *Spinelli*, the Court of Appeals for the District of Columbia Circuit stated, "The district court . . . should have dismissed Spinelli's Rehabilitation Act claim for lack of jurisdiction on the ground that he failed to exhaust his administrative remedy. The Act limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint.'" 446 F.3d at 162 (quoting 29 U.S.C. § 794a(a)(1)); *but* see, *Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000) (holding, in the context of an employment discrimination lawsuit, "that the exhaustion requirement, while weighty, is not jurisdictional"). Not only was the Rehabilitation Act claim at issue in the *Spinelli* case an employment claim, but the statutory provision construed by the *Spinelli* court pertains to employment discrimination complaints specifically:

> The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 . . . shall be available, with respect to any complaint under section 791 of this title, *to any employee or applicant for employment aggrieved by the final disposition* of such *complaint*, or by the failure to take final action on such *complaint.* In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

29 U.S.C. § 794a(a)(1) (emphasis added). *See also Williams*, 320 F. Supp. 3d at 129 (relying on *Spinelli*, and dismissing Postal Service employee's Rehabilitation Act claims for lack of jurisdiction where she filed administrative EEO complaint well after she commenced the legal action); *Howland*, 209 F. Supp. 2d at 590 (finding that terminated Postal Service employee failed to exhaust his administrative remedies where he abandoned his Merit Systems Protection Board claim and failed to file an EEO complaint;

dismissing case, including Rehabilitation Act claim, for lack of subject matter jurisdiction); *Roach*, 2012 WL 1952680, at *4 (holding that the court lacked jurisdiction over former Defense Finance and Accounting Service employee's claim for wrongful termination because she failed to exhaust grievance procedures detailed in the applicable collective bargaining agreement and/or to file an EEOC complaint). The prisoner litigation context, requiring the co-application of PLRA exhaustion requirements—the purpose of which is to provide *prison officials* with the opportunity to address prisoner complaints before court intervention is pursued, *see Porter v. Nussle*, 534 U.S. 516, 524–25 (2002)—*and* EEO exhaustion requirements for Rehabilitation Act claims, is transparently distinct from the employment litigation context.

Second, the provision of the Rehabilitation Act that enables a private right of action in the prisoner litigation context does not explicitly condition jurisdiction on the exhaustion of EEO procedures. *See* 29 U.S.C. § 794a(a)(2) ("The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 [Nondiscrimination under Federal grants and programs] of this title."). Section 504 of the Rehabilitation Act, the substantive provision under which Plaintiff brings Count One, also makes no mention of exhaustion requirements:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation,

Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

29 U.S.C. § 794(a). The District of Columbia Circuit has explained the difference between

administrative exhaustion requirements that are jurisdictional and those that are non-

jurisdictional in the following manner:

> The word "exhaustion" now describes two distinct legal concepts. The first is a judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court. *See generally* 2 Richard J. Pierce, Jr., Administrative Law Treatise § 15.2 (4th ed.2002). We will call this doctrine "non-jurisdictional exhaustion." Non-jurisdictional exhaustion serves three functions: "giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review[.]" *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409 (D.C. Cir. 1998); *McCarthy v. Madigan*, 503 U.S. 140, 145-46, 112 S. Ct. 1081, 1086–87, 117 L.Ed.2d 291 (1992).

> Occasionally, exhaustion will not fulfill these ends. There may be no facts in dispute, *see McKart v. United States,* 395 U.S. 185, 198 n. 15, 89 S. Ct. 1657, 1665 n.15, 23 L.Ed.2d 194 (1969), the disputed issue may be outside the agency's expertise, *see id.* at 197-98, 89 S.Ct. at 1660-61, or the agency may not have the authority to change its decision in a way that would satisfy the challenger's objections, *see McCarthy,* 503 U.S. at 147-48, 112 S. Ct. at 1087-88. Also, requiring resort to the administrative process may prejudice the litigants' court action, *see id.* at 146-47, 112 S. Ct. at 1086-87, or may be inadequate because of agency bias, *see id.* at 148-49, 112 S. Ct. at 1088. In these circumstances, the district court may, in its discretion, excuse exhaustion if "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.* at 146, 112 S. Ct. at 1086 (quoting *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979)).

> The second form of exhaustion arises *when Congress requires resort to the administrative process as a predicate to judicial review*. This "jurisdictional exhaustion" is rooted, not in prudential principles, but in Congress' power to control the jurisdiction of the federal courts. *See EEOC v. Lutheran Soc. Servs.,* 186 F.3d 959, 963-64 (D.C. Cir. 1999). Whether a statute requires

exhaustion is purely a question of statutory interpretation. *See McCarthy,* 503 U.S. at 144, 112 S. Ct. at 1085. If the statute does mandate exhaustion, a court cannot excuse it. *See Shalala v. Illinois Council on Long Term Care,* 529 U.S. 1, 13, 120 S. Ct. 1084, 1093, 146 L.Ed.2d 1 (2000).

While the existence of an administrative remedy automatically triggers a non-jurisdictional exhaustion inquiry, jurisdictional exhaustion requires much more. In order to mandate exhaustion, a statute must contain "'[s]weeping and direct' statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim." *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S. Ct. 2457, 2462, 45 L.Ed.2d 522 (1975); 2 Pierce, Administrative Law Treatise § 15.3, at 986. We presume exhaustion is non-jurisdictional unless "Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision," *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.,* 727 F.2d 1204, 1208 (D.C.Cir.1984).

*Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247–48 (D.C. Cir. 2004) (emphasis added, footnote omitted, modifications in original). "[A]lthough Congress mandated that all Executive agencies 'carry out' the 1978 amendment making section 504 applicable to 'any program or activity conducted by [the] Executive agency,' 29 U.S.C. § 794(a), *Congress itself did not mandate exhaustion of the administrative remedies (if any) contained in the ensuing regulations*." *Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 732 (E.D.N.C. 2013) (emphasis added). Accordingly, the Court is not convinced that Rehabilitation Act exhaustion is "jurisdictional" in the prisoner litigation context, and is more persuaded that type of exhaustion at issue for prisoners seeking relief under section 504 of the Rehabilitation Act is "non-jurisdictional."

Moreover, the Court declines to convert the instant Motion to Dismiss into a motion for summary judgment. Therefore, the Motion to Dismiss the Rehabilitation Act claim should have been analyzed under Rule 12(b)(6), not Rule 12(b)(1), and Ms. Charles' affidavit should not have been considered. *See, e.g.*, *Occupy Columbia v. Haley*, 738

F.3d 107, 116 (4th Cir. 2013) ("In resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment."). Plaintiff's objections are sustained to this extent, and the remainder of the objections on this issue (*see* ECF No. 184 at 8) are overruled as moot. The Court declines to adopt section III.A.2. ("Exhaustion of RA Claims") of the Report (ECF No. 172 at 14–17), and denies Defendants' Motion to Dismiss as it pertains to Count One because any failure to exhaust administrative remedies is not apparent on the face of the Second Amended Complaint.[3]

### B. Subject Matter Jurisdiction

With respect to subject matter jurisdiction, the Magistrate Judge first concluded that if Plaintiff exhausted his administrative remedies, then Plaintiff could properly state a plausible claim for injunctive relief against the BOP under the Rehabilitation Act. (*Id.* at 17.) The Report notes that the cases cited by Defendants seeking to undermine the viability of Plaintiff's Rehabilitation Act injunction claim "either do not involve the [Rehabilitation Act] or arose from challenges to agency regulations which is not the type of [Rehabilitation Act] claim asserted in this case." (*Id.* at 18.) Accordingly, the Magistrate Judge found that the Court possesses subject matter jurisdiction over Count One, only suggesting dismissal of this claim because of her preceding conclusion that Plaintiff failed to exhaust his Rehabilitation Act administrative remedies. (*See id.* at 17–18.)

Defendants do not specifically object to the Magistrate Judge's conclusion that, putting aside the administrative exhaustion issue, Count One states a plausible claim to relief. (*See* ECF No. 185.) The Court finds no error in this section of the Report (III.B.1.),

---

[3] Defendants concede that Plaintiff exhausted his PLRA administrative remedies with respect to Count One. (ECF No. 144 at 21.)

and hereby adopts the Magistrate Judge's reasoning and conclusions.

The Magistrate Judge next concluded that the Court possesses subjection matter jurisdiction over Plaintiff's claim for injunctive relief against Defendants BOP, Hurwitz, and Keller for alleged violations of the Eighth Amendment under 28 U.S.C. § 1331 and the Administrative Procedures Act ("APA"). (*See* ECF No. 172 at 18–19.) Accordingly, the Magistrate Judge recommended that the Court deny Defendants' Motion to Dismiss Count Two. (*Id.* at 19.)

Defendants object, arguing, "While the Magistrate judge is correct that the Court has jurisdiction under the APA to issue an injunction against the BOP in some contexts, this does not apply to inmate housing decisions, as 18 U.S.C. § 3621(b) is exempt from review under the APA." (ECF No. 185 at 4.) Defendants cite relevant portions of the APA and § 3621(b) to show that: (1) APA jurisdiction does not extend to agency matters committed to agency discretion by law, and (2) § 3621(b) specifically vests the BOP with agency discretion over inmate housing decisions. (*See id.*) Defendants further contend that the designation of the place of Plaintiff's confinement is not reviewable because the recently-enacted "FIRST STEP Act" amended § 3621(b) to state: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b) (effective December 21, 2018).

The Court disagrees and overrules Defendants' objections. First, while Defendants' assertions regarding the limits of APA jurisdiction and the Congressional delegation of discretion over inmate housing decisions are broadly true, the Court finds that Defendants' arguments in this regard unfairly narrow the scope of Plaintiff's claim in Count Two. The gravamen of Plaintiff's injunction claim in Count Two is that Defendants

have shown deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (*See* ECF No. 128 at 38–39.) The relief he requests includes an "order transferring Washington to a Federal Medical Center," but only in the context of his broader concern that his future medical needs be adequately addressed, and only because a Federal Medial Center is "the only type of federal prison with the ability to accommodate inmates with Washington's impairments." (*See id.* at 44.) In other words, Count Two is more faithfully characterized as a challenge to the adequacy of medical care that BOP has provided Plaintiff, than as a challenge to BOP's housing determinations. Though, the adequacy of care challenge is inextricably intertwined with questions surrounding the designation of a place of imprisonment due to the reputed severity of Plaintiff's medical needs. Furthermore, the relief requested is more faithfully characterized as a plea for the Court to ensure that Washington's future medical needs are not neglected, than as a plea to be transferred into or out of any specific confinement facility. (*See id.*) In any event, the undersigned has already ruled, in this case, that "even within categories of decision-making normally committed to agency discretion, there is a line where the scope of discretion stops and violations of constitutional rights begin." (ECF No. 169 at 5.)  Therefore, "the Court join[ed] other courts in concluding that it has the authority to remedy unconstitutional conduct, even when that authority infringes upon BOP's general discretion over inmate housing and medical treatment." (*Id.* (citing *Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 180-82 (D.D.C. 2013)).) Finally, the Court declines to retroactively apply the newly-amended version of § 3621(b)—which amendment came about two years after this action was filed and six months after the Seconded Amended Complaint was filed—because the presumption against retroactivity

has not been overcome. *See Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 172 (4th Cir. 2010) ("[F]ederal . . . courts employ a robust presumption against statutory retroactivity.") Therefore, the Court denies Defendants' Motion to Dismiss Count Two.

### C. Venue

The Magistrate Judge next considered Defendants' venue challenge raised under Rule 12(b)(3), that "[a]ll of Washington's claims regarding other locations outside of South Carolina must be dismissed . . . ." (*See* ECF No. 144 at 12.) The Report notes that "Defendants do not specify which claims are allegedly based on activities outside of South Carolina and they do not request this [C]ourt to transfer the case to a different court." (ECF No. 172 at 20.) The Magistrate Judge found that the Second Amended Complaint is primarily based on allegations of a lack of adequate medical care while Plaintiff was housed in South Carolina, and that references in the pleading to lack of care at other institutions outside the State are not the sole basis for any claim. Accordingly, the Magistrate Judge recommended that Defendants' Motion to Dismiss be denied to the extent it seeks dismissal of any claim for lack of venue.

Defendants do not object to the Magistrate Judge's conclusions regarding venue, and the Court finds no error therein. Therefore, the Motion to Dismiss is denied in so far as it raises a challenge to venue.

### D. Injunctive Relief: Mootness

In considering the Defendants' contention that Plaintiff's claims for injunctive relief arising from his medical care and assistance with activities of daily living ("ADLs") at institutions where he is no longer house are moot, the Magistrate Judge concluded that "Plaintiff's allegations fall squarely within the type of allegations that support a find that

the circumstances of which he complains are ongoing and, thus, capable of repetition yet evading review." (ECF No. 172 at 21.) The undersigned agrees with the Magistrate Judge's reasoning and conclusions in this regard (*see id.* at 21–24), and Defendants have not objected thereto (*see* ECF No. 185). Consequently, the Motion to Dismiss is denied to the extent that it premises dismissal on the mootness of Plaintiff's claims for injunctive relief.

### E. Statute of Limitations

The Magistrate Judge next considered Defendants' statute of limitations defenses and concluded that no statute of limitations bar had been shown. (ECF No. 172 at 24–25.) The Court agrees and Defendants have not objected to this section of the Report. Therefore, the Motion to Dismiss is denied in so far as it asserts statute of limitations defense.

### F. Failure to State Plausible *Bivens* Claims (Counts Three & Four)

The Magistrate Judge adeptly explained the standard of review applicable to Rule 12(b)(6) challenges and the substantive requirements to state a plausible *Bivens* claim. (*See id.* at 25–29.) With those principles in mind, the Magistrate Judge first concluded that Plaintiff's lengthy background allegations with only brief, non-specific, references to Defendants Garcia and Massa (Count Three) do not support plausible *Bivens* claims, because "Plaintiff does not allege that Defendants Garcia or Massa personally played any part in the alleged deliberate indifference to Plaintiff's medical needs or in any injury that Plaintiff suffered as a result thereof." (*Id.* at 30.) Moreover, the Magistrate Judge found, "there are no allegations of sufficient personal knowledge of any wrongdoing by any subordinate to allow these supervisory officials to be held responsible for the

subordinate's actions. (*Id.* at 31.)

Plaintiff objects to these conclusions, arguing that when all reasonable inferences are drawn in Plaintiff's favor, the Second Amended Complaint satisfies the requirements to state a plausible claim for relief against all named Defendants. (*See* ECF No. 184 at 9–10.) This objection is conclusory and is overruled. The Court finds that the Second Amended Complaint fails to state a plausible *Bivens* claim against Defendants Garcia and Massa, and they are dismissed, without prejudice, as party defendants to Count Three.

Next, the Magistrate Judge found that the Second Amended Complaint includes only brief, broad statements regarding Defendants Joyner, Cruz, and Meeks (Count Four). (ECF No. 172 at 31–32.) The Magistrate Judge noted that brief references to Cruz and Meeks responding to Plaintiff's inmate grievance forms, and Joyner signing off on a form approving a request that Plaintiff be transferred away from FCI Estill, "are insufficient to show the required personal involvement [in the alleged deliberate indifference to Plaintiff's medical needs], and there are no allegations of sufficient personal knowledge of any wrongdoing by any subordinate to allow these supervisory officials to be held responsible for the subordinate's actions." (*Id.* at 32–33.) Accordingly, the Magistrate Judge concluded that Count Four fails to allege a plausible *Bivens* claim against Joyner, Cruz, and Meeks. (*Id.* at 32.)

Again, Plaintiff objects to these conclusions, inviting the Court to infer supervisory liability and to find a causal link between Joyner, Cruz, and Meeks' minimal actions described in the complaint and Plaintiff's injuries. (*See* ECF No. 184 at 9–10.) This objection is conclusory and is overruled. The Court agrees with the Magistrate Judge that

"there are no clear factual allegations showing that [Joyner, Cruz, and Meeks] did or did not do anything that led to any injury suffered by Plaintiff." (ECF No. 172 at 33.) Therefore, the Court finds that the Second Amended Complaint fails to state a plausible *Bivens* claim against Defendants Joyner, Cruz and Massa, and they are dismissed, without prejudice, as party defendants to Count Four.

### G. Qualified Immunity

The Court will address the Magistrate Judge's findings with respect to qualified immunity as to Defendants Lepiane, Ulmer, Loranth, and Harvey, and the parties' respective objections to those findings, in the order they are presented in the Report. As to Defendant Lepiane, the Magistrate Judge agreed with Plaintiff "that there are sufficient facts alleged to show that Dr. Lepiane, with knowledge of Plaintiff's eyesight problems and the directions of outside ophthalmologists, directed other medical professionals not to administer the necessary eye drops." (*Id.* at 35.) Moreover, the Magistrate Judge found that Plaintiff's allegations are sufficient to state a plausible claim that Lepiane's conduct amounted to a constitutional violation "because both the objective prong (Plaintiff's serious eyesight problems) and the subjective prong (Lepiane's refusal to assist him despite knowledge of his needs) of a plausible Eight Amendment claim are satisfied." (*Id.* at 35–36.) Finally, the Magistrate Judge concluded that "a reasonable medical provider would have known at the time that failing to provide an inmate adequate medical treatment or medication for a serious medical need would be unlawful." (*Id.* at 36 (citations omitted).)

Defendants object to the Magistrate Judge's findings regarding qualified immunity as to Lepiane. (ECF No. 185 at 5–7.) They generally argue that Plaintiff's "limited

allegations fail to demonstrate that Defendant Lepiane knew that Plaintiff would suffer a serious or significant harm by self-administering his eye drops, or not receiving them," that Plaintiff failed to show that Lepiane "acted with a culpable state of mind," and that "[a]lthough the Plaintiff disagrees with the medical care provided, and Defendant Lepiane's attempts to teach him to self-administer his eye drops, the claims simply do not rise to the level of a constitutional violation." (*See id.*) The Court finds that Defendants' arguments fail to view the allegations in the light most favorable to Plaintiff, and are insufficient to displace the sound reasoning and conclusions of the Magistrate Judge. The objection is overruled, and the Motion to Dismiss is denied with respect to a qualified immunity defense for Defendant Lepiane.

As to Defendant Ulmer, the Magistrate Judge noted that Plaintiff's allegations show that Ulmer, a registered nurse at FCI Estill, refused to provide Plaintiff with his medications on several occasions, intentionally altered Plaintiff's prescription for sunglasses to prevent him from receiving the appropriate glasses, and affirmatively prevented other medical providers from assisting Plaintiff with his prescribed eye drops. (ECF No. 172 at 36–37.) The Magistrate Judge stated, "While Defendants deny that the allegations are sufficient to state a plausible medical indifference claim, their assertions only show that there are factual disputes among the parties." (*Id.* at 37.) Thus, the Magistrate Judge concluded, "Because a plausible *Bivens* claim is alleged and because a reasonable medical provider would have known at that time that failing to provide an inmate adequate medical treatment for a serious medical need would be unlawful, Defendant Ulmer is not entitled to qualified immunity at this stage of the litigation." (*Id.* at 37–38.)

Again, Defendants object to the sufficiency of the allegations against Ulmer, and

to the Magistrate Judge's conclusions derived therefrom. Defendants generally argue that knowing alteration of Plaintiff's prescription did not pose a serious or significant threat to Plaintiff, that Plaintiff has not asserted that Defendant Ulmer denied him sunglasses, "only that he wanted the darker tint recommended by the ophthalmologist," and that Plaintiff's allegations do not show that Defendant Ulmer had a culpable state of mind. (ECF No. 185 at 7–8.) The Court finds that Plaintiff has stated a plausible claim to relief against Defendant Ulmer sufficient to survive a qualified immunity defense under Rule 12(b)(6) review. Accordingly, the objection is overruled and the Court adopts the recommendation in the Report with respect to a qualified immunity defense for Defendant Ulmer.

As to Defendant Loranth, the Clinical Director at FCI Williamsburg, the Report noted Plaintiff's allegations that "despite his knowledge of the ambulation problems Plaintiff experienced due to his failing eyesight, Defendant Loranth refused to assist Plaintiff in receiving his prescribed medications and refused him treatment for ongoing pain in his right eye." (ECF No. 172 at 38.) The Report further detailed Plaintiff's allegations that "Defendant Loranth was dismissive of his needs for prescribed medications and assistance with [ADLs] when he refused to acknowledge that Plaintiff was blind despite a medical report from an ophthalmologist who had assessed Plaintiff's condition." (*Id.*) The Magistrate Judge concluded that these allegations, accepted as true, "show that Loranth was dismissive of Plaintiff's medical condition and disregarded medical treatment or directions from the ophthalmologist resulting in increased pain to Plaintiff." (*Id.*)

Defendants object to this conclusion, arguing that Loranth believed Plaintiff was legally blind, not totally blind, and was able to perform some of the ADLs without the

requested assistance. (ECF No. 185 at 8.) Defendants further argue that Plaintiff's claims against Loranth amount to negligence allegations, not a constitutional violation, stating, "While the Plaintiff alleges a difference of opinion with Defendant Loranth in the level of medical care needed, he does not demonstrate a complete failure to provide medical care." (*Id.* at 8–9.) The Court finds that the Second Amended Complaint includes allegations that, with knowledge of the severity of Plaintiff's ocular condition, Loranth delayed and/or disregarded necessary treatment and accommodations, and the objection is overruled. Accordingly, Loranth's qualified immunity defense is not viable at this stage, and the Motion to Dismiss is denied insofar as it premises dismissal of the *Bivens* claim against Loranth on a qualified immunity theory.

Finally, the Magistrate Judge concluded that Defendant Harvey, the corrections officer in charge of the Special Housing Unit at FCI Estill, is entitled to qualified immunity, and recommended granting the Motion to Dismiss Count Five on this basis. (ECF No. 172 at 39–40.) Plaintiff alleges that Harvey forced him to disrobe for an unnecessary medical evaluation after he reported being the victim of unwanted touching by unidentified inmates or corrections officers, that Plaintiff told Harvey that his cellmate was dangerous and had threatened him, and that Harvey forced Plaintiff to stay in the same cell with the same cellmate, who ultimately placed sharp weapons against Plaintiff's throat in a threatening manner. (*See* ECF No. 128 at 29–30, 42.) The Magistrate Judge found that these allegations fail to state a plausible *Bivens* claim against Harvey "because Plaintiff does not allege that he suffered any type of physical injury from the alleged unnecessary examination or from actions of his cellmate for which Defendant Harvey could be found liable." (ECF No. 172 at 39 (citations omitted).) Moreover, the Magistrate Judge

concluded that even if there were sufficient allegations of an injury to state a claim against Defendant Harvey, such a claim would be subject to dismissal for lack of administrative exhaustion because it is clear from the face of the Second Amended Complaint that the allegedly offending actions occurred more than two months after Plaintiff filed this case. (*Id.* at 39–40.)

Plaintiff objects to the Magistrate Judge's findings and conclusions, arguing first that the Second Amended Complaint alleges physical, not just emotional, injuries as a result of Washington's cellmate's actions. (ECF No. 184 at 10–11.) It is true that Count Five seeks redress against Harvey for "physical" injury (*see* ECF No. 128 ¶¶ 150–51); however, the substance of the factual allegations does not support *any* physical injury from the events as described (*see id.* ¶ 99). The objection is without merit and is overruled.

Plaintiff further objects to the recommendation that, even if an actionable *Bivens* claim has been asserted against Harvey, it should be dismissed for lack of administrative exhaustion. (ECF No. 184 at 11.) Plaintiff argues that a Rule 12(b)(6) motion to dismiss is not the proper vehicle to vindicate an administrative exhaustion defense, and that, "in any event, Washington has substantially complied with the exhaustion requirements." (*Id.*) As discussed above, administrative exhaustion defenses are properly considered under Rule 12(b)(6) where the failure to exhaust remedies is apparent without resort to outside documentation. (*See supra* at 3–12.) Relatedly, Defendants object to the Magistrate Judge's statement, in a different section of the Report, that "any assertions of lack of exhaustion relating to the officials and employees of . . . FCI-Estill (Defendants... and Harvey) [could not be considered under Rule 12(b)(6)] because consideration of an

exhaustion defense as to these Defendants requires the [C]ourt to analyze [outside documents] before a decision on the status of Plaintiff's exhaustion effort can be reached." (*See* ECF Nos. 185 at 9–10; 172 at 13.) The conflicting statements in the Report about whether administrative exhaustion of the claims against Harvey could be considered under Rule 12(b)(6) appear to be a simple oversight, as the Magistrate Judge, when discussing Count Five specifically, clearly concluded that a lack of administrative exhaustion *is* detectable from the face of the pleadings. (*See* ECF No. 172 at 39–40.) Nonetheless, the Court overrules both parties' objections as moot because Count Five fails to state a plausible *Bivens* claim against Harvey in the first instance. Accordingly, Defendant Harvey is entitled to qualified immunity and the Motion to Dismiss Count Five is granted.

## CONCLUSION

For the reasons set forth above, the Report (ECF No. 172) of the Magistrate Judge is accepted and adopted herein, with the exception of section III.A.2. ("Exhaustion of RA Claims"). Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 144) is GRANTED in part and DENIED in part. The motion is GRANTED without prejudice as to Defendants Mosley, Barnes, Joyner, Cruz, Meeks, Blocker, Fonte, Bryan, Garcia, Massa, and Harvey. The motion is DENIED as to Defendants BOP, Hurwitz, Keller, Lepiane, Ulmer, and Loranth. Plaintiff has offered to partially dismiss without prejudice Counts One, Two, and Six as to Hurwitz and Keller, should the Court find that those Counts are proper against the BOP. (*See* ECF No. 149 at 2 n.2.) The Court finds that it has jurisdiction over the itemized claims against the BOP, and Defendants Hurwitz and Keller are accordingly dismissed as party defendants without prejudice. Therefore,

Defendants' Motion to Dismiss is DENIED as to Defendants BOP, Lepiane, Ulmer, and

Loranth, and the case will proceed as to them.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 26, 2019
Charleston, South Carolina