UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Burl Washington, ) | Civil Action No. 5:16-3913-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Federal Bureau of Prisons; ) | |
| Richard Lepiane; Eve Ulmer; ) | |
| Estate of Dr. G. Victor Loranth; ) | |
| and the United States, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Defendants Richard Lepiane, Eve Ulmer, and the Estate of Dr. G. Victor Loranth's ("Individual Defendants") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 304.) The Rule 12(c) motion contends that Plaintiff Burl Washington's ("Plaintiff") claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), are subject to dismissal in light of the U.S. Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which clarified the Court's *Bivens* framework. Plaintiff responded to the motion on August 2, 2022, and the Individual Defendants filed a reply on August 9, 2022. (ECF Nos. 307 & 310.) This Court heard oral arguments on the Rule 12(c) motion on August 11, 2022. (ECF No. 313.) For the following reasons, the motion for judgment on the pleadings is granted and Plaintiff's *Bivens* claims against the Individual Defendants are dismissed. Trial will proceed on August 22, 2022, as to Plaintiff's Federal Tort Claims Act ("FTCA") and injunctive claims only.

1

## **BACKGROUND**

The factual background of this case is set out in significant detail in the Court's prior Orders, and the Court assumes familiarity therewith. (*See, e.g.*, ECF No. 239 (denying Defendants' motions for summary judgment).) On April 12, 2019, Plaintiff filed his Third Amended Complaint, which encompasses claims against the Federal Bureau of Prisons ("BOP"), the United States, and three individual federal employees. As to the BOP, Plaintiff claims he was discriminated against because of his disability ("Rehabilitation Act claim") (ECF No. 197 ¶¶ 108–19), and he has been subjected to cruel and unusual punishment due to the BOP's and the Individual Defendants' inconsistent medical care and failure to provide the medical and personal assistance that he needs due to his blindness ("Injunctive Relief claim" and "*Bivens* claims") (*id.* ¶¶ 120–38). As to the United States, Plaintiff alleges he has suffered medical malpractice and violation of the Federal Tort Claims Act ("FTCA") through the BOP's and the Individual Defendants' alleged failure to provide medically necessary treatment, surgery, consultations, physical and occupational therapy, tools, assistance, and education necessitated by his condition; alleged failure to provide or exercise due care; and alleged failure to provide health care services. (*id.* ¶¶ 139–56.)

Plaintiff's *Bivens* claims are set out in Count 3 of the Third Amended Complaint (*id.* ¶¶ 127–131). As to the Individual Defendants, Plaintiff alleges:

> 129.    Defendants have ignored and disregarded the express instructions of Washington's treating ophthalmologists that Washington be provided with a nurse or companion to assist him with ambulation, activities of daily living, and administration of his medications. They have done so despite being informed that the above accommodations are medically necessary and failure to provide them will cause Washington's condition to worsen.
>
> 130.    Defendants have failed to properly administer Washington's

> medicines and have prevented Washington from accessing his medications and other medically necessary items, such as sunglasses, by refusing treatment, and ignoring or altering Washington's prescriptions.

(*id.*) Plaintiff asserts that the Individual Defendants' deliberate indifference to his serious medical needs "has caused [him] to suffer persistent pain, frustration, and anxiety, and accelerated [his] vision loss[.]" (*id.* ¶ 131.)

Defendants moved for summary judgment (ECF Nos. 229 & 230) and the Court denied Defendants' motions on February 3, 2020. (ECF No. 239.) Specifically, the Court found the state of the evidence regarding whether Defendants' failed to timely schedule Plaintiff's medical appointments and assist Plaintiff with the administration of his eye drops, in conjunction with the claim that Defendants were aware that a delay in medical treatment and improper administration of Plaintiff's eye drops could result in pain for Plaintiff and a diminishment of Plaintiff's vision, created a question of fact concerning whether Plaintiff was unconstitutionally denied medical treatment. (*Id.* at 14.) After various scheduling adjustments, a jury trial on Plaintiff's *Bivens* claims was set for August 22, 2022. (ECF No. 291.) The Supreme Court decided *Egbert* on June 8, 2022. 142 S. Ct. 1793. The Individual Defendants filed their Rule 12(c) motion on July 19, 2022. (ECF No. 304.)

## **STANDARD OF REVIEW**

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6). *Massey v. Ojaniit*, 759 F.3d 343, 347, 353 (4th Cir. 2014). Consequently, a Rule 12(c) motion "'tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact.'" *Id.* at 353 (quoting *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th

3

Cir.2014)). The court must "accept all well-pleaded allegations . . . as true" and "draw all reasonable factual inferences in [the plaintiff's] favor," but is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Id.* (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). The unavailability of a *Bivens* remedy may be raised through a motion under Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2)(B).

A party may move for judgment on the pleadings "[a]fter the pleadings are closed— but early enough not to delay trial." Fed. R. Civ. P. 12(c). It is appropriate to move for judgment on the pleadings where, as here, an intervening decision from the Supreme Court changes the legal landscape in a way that makes clear that certain claims should be disposed of before trial as a matter of law. *See, e.g.*, *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1131 (N.D. Ala. 2017) (granting Rule 12(c) motion filed twenty-one days prior to start of trial in light of then-recent Supreme Court *Bivens* decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), because claim presented new *Bivens* context, the existence of alternate available remedies weighed against extension of *Bivens*, and 'special factors' counseled the court should hesitate to fashion a *Bivens* remedy where Congress had been silent); *see also* Fed. R. Civ. P. 1 (requiring construction and use of Federal Rules of Civil Procedure "by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Plaintiff's contention that the instant motion is untimely is rejected as the motion is based on a recent development in applicable law and a Rule 12(c) motion *must* be heard and decided before trial unless the court orders a deferral until trial. Fed. R. Civ. P. 12(i).

**DISCUSSION**

A. *Bivens*, its Progeny, and the Change Wrought by *Egbert*

Damages actions pursuant to 42 U.S.C. § 1983 represent the remedy that Congress created for plaintiffs whose constitutional rights have been violated by state officials. There is no parallel congressionally created remedy for constitutional violations committed by agents of the federal government. In *Bivens*, the Supreme Court recognized an implied damages action to compensate persons injured by federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. at 397. The *Bivens* court acknowledged that the Fourth Amendment does not provide for money damages "in so many words," but stated that "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'" *Id.* at 396 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)). The Court also noted that it was not limited by any "explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents," and determined that the case "involve[d] no special factors counseling hesitation in the absence of affirmative action by Congress [to create such a remedy]." *Id.* at 396–97. Thus, the *Bivens* court held that it could authorize a remedy under general principles of federal jurisdiction. *See id.* at 392.

In the decade following *Bivens*, the Supreme Court implied similar remedies twice more, in a Fifth Amendment gender discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979) (wherein an administrative assistant sued a U.S. Congressman for firing her because she was a woman), and in an Eighth Amendment cruel and unusual punishment

5

clause case, *Carlson v. Green*, 446 U.S. 14 (1980) (wherein a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma, which failure led to the prisoner's death). "After those decisions, however, the Court changed course." *Hernández v. Mesa*, 140 S. Ct. 735, 741 (2020). Although *Bivens*, *Passman*, and *Carlson* remain valid in their own contexts, the Supreme Court's willingness to extend *Bivens*-type remedies has grown increasingly narrow over time. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

In determining whether to imply a damages action pursuant to *Bivens*, Supreme Court precedent instructs district courts to ask two questions: (1) whether the case presents a "new *Bivens* context"—*i.e.*, whether it is meaningfully different from the three cases in which the Supreme Court implied a damages action (*Ziglar*, 137 S. Ct. at 1859–60); (2) if a claim arises in a new context, whether there are "special factors counselling hesitation"—*i.e.*, whether such factors cause a court to hesitate in affirming that the Judiciary, as opposed to Congress, is well suited to consider and weigh the costs and benefits of allowing a damages action to proceed (*id.* at 1858). In *Ziglar*, the Supreme Court stated:

> The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was

6

      operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

137 S. Ct. at 1859–60. "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675). Accordingly, any *Bivens* claim must be dismissed if it arises in a new context and presents "'special factors counselling hesitation'" in fashioning a remedy absent action by Congress. *Earle v. Shreves*, 990 F.3d 774, 779 (4th Cir. 2021) (quoting *Ziglar*, 137 S. Ct. at 1860). The Fourth Circuit has recognized that this pre-*Egbert* framework was in keeping with the Supreme Court's move away from recognizing implied causes of action: "Consistent with the Court's view that further expansion of the *Bivens* remedy was disfavored, the analytical framework established by the *Ziglar* Court places *significant obstacles* in the path to recognition of an implied cause of action." *Id.* at 778 (emphasis added).

      *Egbert* clarified this analytical framework in a manner that made it even more rigorous, in effect making it significantly more unlikely that an implied cause of action will be recognized. In *Egbert*, the Supreme Court considered two *Bivens* claims: (1) a Fourth Amendment excessive force claim that presented "'almost parallel circumstances'" and a similar "'mechanism of injury'" to *Bivens* itself, 142 S. Ct. at 1805 (quoting *Ziglar*, 137 S. Ct. at 1859), and (2) a novel First Amendment retaliation claim, 142 S. Ct. at 1807–08. Both claims arose out of the plaintiff's interactions with the U.S. Border Patrol. *Id.* at 1799–1802. The *Egbert* court acknowledged that its precedents "describe two steps," but explained that these steps "often resolve to a single question: whether there is any reason

7

to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803; *see also Silva v. United States*., No. 21-1008, 2022 WL 3023684, at *3 (10th Cir. Aug. 1, 2022) (recognizing that *Egbert* "appeared to alter the existing two-step *Bivens* framework"). The Court instructed that if there is "even a single" rational reason to defer to Congress to create a remedy for relief, "a court may not recognize a *Bivens* remedy." *Id.* at 1803 (citing *Hernández*, 140 S. Ct. at 741, 743). Moreover, *Egbert* rejected the petitioner's Fourth Amendment claim despite its extremely close factual and legal parallels with *Bivens* itself, affirming that the plaintiff's Fourth Amendment claim presented a new *Bivens* context despite the fact that, as in *Bivens*, the alleged excessive force arose in the setting of the plaintiff's arrest by a law enforcement officer. *Id.* at 1800–01, 1804. The Court spelled out the takeaway from this demanding approach: a *Bivens* remedy will be unavailable "in most every case." *Id.* at 1803 ("If there is a rational reason to think that [Congress is better situated than the courts to decide whether to provide for a damages remedy]—as it will be in most every case—no *Bivens* action may lie. Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogate legislative power." (cleaned up)). As the Tenth Circuit recently stated, "[t]he Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril." *Silva*, 2022 WL 3023684, at *1.

Ultimately, *Egbert* held that the Court of Appeals was wrong to conclude that there was no reason to hesitate before recognizing an implied cause of action against the Border Patrol Agent "for two independent reasons: Congress is better positioned to create remedies in the [context considered by the Court], and the Government already has provided alternative remedies that protect plaintiffs like [the respondent]." *Id*. at 1804.

8

Because the Fourth Amendment claim in *Egbert* could not proceed, the Eighth Amendment claims against the Individual Defendants in this case also fail as a matter of law. Both independent reasons articulated in *Egbert* apply in this case.

### B. New Context Analysis

Based on *Egbert,* the Court finds that Plaintiff's claims against the Individual Defendants arise in a new *Bivens* context. A *Bivens* claim arises in a new context whenever the case is "different in a meaningful way from previous *Bivens* cases decided" by the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. The Court has previously acknowledged that its "understanding of a 'new context' is broad" and "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 140 S. Ct. at 743.

However, *Egbert* signals a significant shift in how courts should approach the new context inquiry. *Egbert* affirmed that the plaintiff's Fourth Amendment claim arose in a new context despite its very close factual and legal similarities to *Bivens*. *See* 142 S. Ct. at 1810 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself."); *id*. at 1815 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("At bottom, [the respondent's] claim is materially indistinguishable from the claim brought in *Bivens*."). In doing so, the majority observed that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809. In other words, a court should conduct a special factors analysis even when the plaintiff's allegations closely resemble *Carlson* because that case "predates [the Court's] current approach to implied

9

causes of action." *Id.* at 1808.

Plaintiff asserts that his claim is not "materially different from the claim deemed viable by the Supreme Court in *Carlson*" and that "the differences are trivial." (ECF No. 307 at 1, 6.) He further asserts "the Individual Defendants have identified no authority expressly indicating that Eighth Amendment claims pursued by prisoners against prison officials for inadequate medical care are no longer available under *Bivens* and its progeny. Until *Bivens* and *Carlson* are overturned, Plaintiff's nearly identical claims against the Individual Defendants remain viable." (*Id.* at 10–11.) Plaintiff contends the Court does not need to infer a new *Bivens* cause of action because the Supreme Court "already extended *Bivens* to the Eighth Amendment context." (ECF No. 307 at 12.)

The Court disagrees and finds that Plaintiff's allegations present more than merely "trivial" differences with *Carlson*. Plaintiff's *Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition. This difference is significant for multiple reasons, including that administrative and injunctive relief would have a completely different application to Plaintiff's claims than to the claims in *Carlson*, where the failure to properly address a medical emergency proved fatal. *See Egbert*, 142 S. Ct. at 1803 (explaining that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider'" (quoting *Ziglar*, 137 S. Ct. at 1864)). Whereas the Court in *Carlson* fashioned a *Bivens*-type remedy to make right a grave constitutional wrong, Plaintiff's *Bivens* claims here risk transforming this Court into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury. If the plaintiff's claims

in *Egbert* implicated a new context as to Fourth Amendment excessive force theory, then Plaintiff's claims here implicate a new context as to Eighth Amendment deliberate indifference theory. It is of no moment that Plaintiff's claims parallel those in *Carlson* to the degree they are brought under the Eighth Amendment and relate to medical care in the prison setting generally. After *Egbert*, such broad similarities with *Bivens*, *Passman*, or *Carlson* are not sufficient on their own to authorize a claim. *See* 142 S. Ct. at 1804–05 (affirming a finding of a new context despite "almost parallel circumstances"). Rather, the Court finds that Plaintiff's *Bivens* claims arise in a new context and proceeds to the special factors analysis.

### C. Special Factors Analysis

Because Plaintiff's claims arise in a new context, so long as there is "'[e]ven a single sound reason'" for a court "'to defer to Congress'" rather than create an implied damages remedy, it must do so. *Egbert*, 142 S. Ct. at 1803 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)). A "special factor" indicates that Congress is better suited than the Judiciary to "'weigh the costs and benefits'" of creating a new damages remedy. *Id.* (quoting *Ziglar*, 137 S. Ct. at 1858). The special factors inquiry is broad-ranging and simply asks "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (emphasis in original) (quoting *Ziglar*, 137 S. Ct. at 1858). "[S]eparation-of-powers principles are or should be central to the analysis." *Ziglar*, 137 S. Ct. at 1857.

This case presents several sound reasons for deference, including: (1) Congress is better positioned to create remedies in the context of chronic medical care in federal

11

prisons; (2) the Government has already provided alternative remedies that protect claimants like Plaintiff, including processes for administrative and injunctive relief; and (3) Congress' passage of the Prison Litigation Reform Act ("PLRA").

First, "the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action" in the context of chronic medical care in federal prisons. *See Egbert*, 142 S. Ct. at 1805 (holding the same as to border security context because it implicates national security considerations). The provision of chronic medical care is a specialized activity requiring a high degree of training and qualification. In the prison context, the provision of such care is made all the more multifaceted because it must coincide with the security demands and inherent limitations of the custody setting. Given this constellation of circumstances, "the Judiciary is comparatively ill suited to decide whether a damages remedy against any [BOP medical provider] is appropriate." *Id.*

Second, the Government has "provided alternative remedies for aggrieved parties in [Plaintiff's] position that independently foreclose a *Bivens* action here." *Egbert*, 142 S. Ct. at 1806. The BOP's Administrative Remedy Program ("ARP") allows an inmate who believes receiving inadequate medical care to file a grievance to correct the issue. *See* 28 C.F.R. § 542.10; *see also Egbert*, 142 S. Ct. at 1806 (holding that the U.S. Border Patrol's grievance procedure foreclosed a *Bivens* remedy and citing BOP's ARP as a special factor that made a *Bivens* claim unavailable in *Malesko*, 534 U.S. at 74); *Silva*, 2022 WL 3023684, at *4 (concluding that the availability of ARP alone was enough to bar the plaintiff's *Bivens* claim based on *Egbert*'s reasoning). "The [ARP] process is substantial; it contains its own statutes of limitations, filing procedures, and appeals process. And prisoners may retain attorneys for assistance with the process." *Callahan*

*v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (internal citation omitted). Where a situation "threatens the inmate's immediate health or welfare," the warden must respond to a grievance within three days. 28 C.F.R. § 542.18. Notably, with respect to federally incarcerated persons, by adding an administrative exhaustion requirement to the PLRA, *see* 42 U.S.C. § 1997e(a), Congress has incorporated the ARP into its scheme for resolving inmate disputes and decreasing the amount of litigation emanating from prisons. The ARP thus bears the endorsement of both the BOP and Congress as the proper means of addressing the complaints of federal inmates. Plaintiff utilized the ARP and exhausted his administrative remedies in this case. (*See* 3rd Am. Compl., ECF No. 197 (describing various administrative requests, grievances, and appeals pursued by Plaintiff).)

The Supreme Court has repeatedly explained, with respect to alternative processes, that "the absence of relief 'does not by any means necessarily imply that courts should award money damages.'" *Egbert*, 142 S. Ct. at 1808 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988)). Rather, "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id.* at 1807 (2022). When an administrative grievance is denied, prisoners have the option of seeking injunctive relief through a judicial action. *See Ziglar*, 137 S. Ct. at 1862 (observing that the ability to pursue injunctive relief for abuses in the prison setting is a special factor). Indeed, Plaintiff obtained preliminary injunctive relief in this case (*see* ECF No. 169) and is seeking further injunctive relief at trial. This is a sharp contrast with *Carlson*, where the injury was fatal and it was therefore "'damages or nothing.'" *Ziglar*, 137 S. Ct. at 1862 (quoting *Bivens*, 403 U.S. at 410 (Harlan, J., concurring in judgment);

*Passman*, 442 U.S. at 245).

In addition, Congress has legislated extensively regarding the rights and protections of incarcerated persons but has never created the remedy that Plaintiff now seeks from this Court. That counsels hesitation. When Congress has legislated extensively on a topic but declined to create a damages remedy, "the silence of Congress is relevant" and suggests an intent *not* to create such a remedy. *Ziglar*, 137 S. Ct. at 1862. Relatedly, Congress's decision to delegate authority to an agency and insulate the agency's decision-making from judicial review also "mak[es] it less likely that Congress would want the Judiciary to interfere" by authorizing a *Bivens* remedy. *See id.* at 1858 (discussing contexts in which Congress has designed regulatory authority "in a guarded way").

Numerous aspects of the maintenance of federal prison institutions and the treatment, rights, and grievance procedures of persons incarcerated there are regulated by statute, including the provision of medical care. For example, the BOP is required to place prisoners in facilities where "the prisoner's mental and medical health needs" can be met, 18 U.S.C. § 3621, and to "provide for the safekeeping, care, and subsistence" of all prisoners, 18 U.S.C. § 4042(a)(2). But despite mandating adequate medical care, Congress has never opted to create an individual capacity cause of action that permits federal prisoners sue BOP healthcare providers when their services are perceived to fall short. Instead, Congress has delegated broad authority to the Attorney General over "[t]he control and management of Federal penal and correctional institutions[.]" 18 U.S.C. § 4001(b)(1).[1]

---

[1] Notably, Congress has cabined the Attorney General's authority over state prisons to intervention in cases

14

And rather than expand the scope of prisoner litigation, Congress passed the PLRA in 1995 to "limit litigation brought by prisoners." *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 171 (4th Cir. 1999); *see also Cagle v. Hutto*, 177 F.3d 253, 257 (4th Cir. 1999) (explaining that the PLRA is intended to "remove the federal district courts from the business of supervising the day-to-day operation" of prisons). As multiple courts have noted, "Congress paid close attention to inmate constitutional claims when it enacted the [PLRA] of 1995," *Callahan*, 965 F.3d at 524, but did not create a "standalone damages remedy against federal jailers," *id.* (quoting *Ziglar*, 137 S. Ct. at 1865); *see also Butler v. S. Porter*, 999 F.3d 287, 294 (5th Cir. 2021) (observing the same and rejecting *Bivens* remedy). Congress has thus had opportunities to authorize Plaintiff's proposed *Bivens* claims when legislating on multiple subjects—including prison medical care and prisoner litigation—but has always declined. This suggests that it would be inappropriate for this Court to act in Congress's place by implying a remedy.

Based on the clarified framework outlined in *Egbert,* Plaintiff's *Bivens* claims arise in a new context, and there are sound reasons for this court "to defer to Congress" rather than create an implied damages remedy. In particular, the existence of alternative processes and Plaintiff's utilization those processes with respect to the harm alleged in this case counsels against recognizing a *Bivens* remedy. For these reasons, his *Bivens* claims are no longer viable.

---

involving "egregious or flagrant conditions which deprive persons residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing them to suffer grievous harm." 42 U.S.C. § 1997c(a)(1). This in keeping with Congress's disparate treatment of state prisons—where federal oversight is more limited and prisoners may file private constitutional claims under 42 U.S.C. § 1983 to protect their federal rights—and federal prisons—where the federal government has direct control over its institutions and the authority to implement its own safeguards.

## **CONCLUSION**

For the foregoing reasons, the Rule 12(c) motion is GRANTED and the Individual Defendants Richard Lepiane, Eve Ulmer, and the Estate of G. Victor Loranth are dismissed as parties to this action. Plaintiff's remaining claims against the United States and the Federal Bureau of Prisons pursuant to the FTCA, the Rehabilitation Act, and an Eighth Amendment claim for injunctive relief will proceed to trial.

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

August 25, 2022
Charleston, South Carolina